IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

OCT 2 0 2025

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 2:25mj 22-7 |
| WILLIAM D. MARTIN, | ) |
| | ) |
| and | ) |
| | ) |
| JAQUAN JOHNSON | ) |
| | ) |
| Defendants. | ) |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Devin R. Conyers, being duly sworn, depose and state that:

**I.    INTRODUCTION AND AGENT BACKGROUND**

1.    I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the U.S. who is empowered to conduct investigations and to make arrests for the offenses enumerated in 18 U.S.C. § 2516, and a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41.

2.    I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, and have served in that capacity since 2022.  I am currently assigned to HIDTA Group 71, Norfolk District Office, Washington Division where I am responsible for conducting investigations of criminal violations of the Controlled Substances Act.

3.    In connection with my official DEA and law enforcement duties, I have actively participated in numerous searches and seizures, surveillance, intelligence analysis, controlled deliveries, arrests, interviews, and interrogations relating directly and indirectly to drug distribution violations of Title 21 of the United States Code. I have also initiated and participated

in numerous narcotics investigations at the local and federal level, to include several long-term drug trafficking and conspiracy investigations in partnership with other federal and local law enforcement agencies. Further, I have investigated a variety of cases involving the use of firearms criminally and in connection with controlled substance violations.

4.      While conducting narcotic investigations, I consulted with other experienced investigators concerning the practices of drug traffickers and the best methods of investigating them. I also received training in asset forfeiture, money laundering, and asset identification of drug traffickers.

5.      As a result of my training and experience, I have become familiar with methods that drug traffickers and drug trafficking organizations (hereinafter "DTOs") use to distribute heroin, cocaine, cocaine base, methamphetamine, marijuana, fentanyl, and other controlled substances. I have also become familiar with the ways in which drug traffickers and DTOs conduct their business, including, but not limited to: their methods of importing and distributing illegal drugs; their use of communications facilities; their transportation of platforms to arrange for and coordinate distributions; their use of codes to conduct transactions; and their financial vehicles to launder the proceeds of illegal drug transactions. Further, I have become familiar with the methods and tactics that drug traffickers and DTOs use to protect their controlled substances and proceeds, which can include the criminal use of firearms.

6.      The facts and information contained in this affidavit are based upon my personal observations, training, and experience, as well as information obtained from other law enforcement officers involved in this investigation, witnesses, and other sources. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not set forth all my knowledge about this matter.

7.      I submit this affidavit in support of a criminal complaint and arrest warrant for WILLIAM D. MARTIN (hereinafter "MARTIN") and JAQUAN JOHNSON (hereinafter "JOHNSON"). This affidavit sets forth facts necessary to establish probable cause to believe that MARTIN committed the following offenses in the Eastern District of Virginia:

a.  Conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C);

b.  Distribution of a mixture or substance which contains a detectable amount of cocaine hydrochloride, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and

c.  Distribution of a mixture or substance which contains a detectable amount of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

Additionally, this affidavit sets forth facts necessary to establish probable cause to believe that JOHNSON committed the following offenses in the Eastern District of Virginia:

a.  Conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C);

b.  Distribution of a mixture or substance which contains a detectable amount of cocaine hydrochloride, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and

c.  Distribution of a mixture or substance which contains a detectable amount of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

## II.      FACTS SUPPORTING PROBABLE CAUSE

8.      In the months of February and March of 2025, members of the Drug Enforcement Administration (DEA) Norfolk District Office, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Norfolk Field Office, and the Norfolk Police Department (NPD) initiated a joint investigation involving the distribution of narcotics and firearms involving a hair salon in Norfolk, Virginia.

9.      During this investigation, ATF Confidential Sources (hereinafter "CS1" and "CS2") were utilized to obtain information and conduct controlled purchases of narcotics. CS1 and CS2 have provided true and accurate information in the past that has led to arrests and seizure of narcotics. During each controlled purchase, CS1 and CS2 were searched before and after and found free of contraband. CS1 and CS2 were provided recording devices to record the transactions and provided government funds to complete the purchase.

10.     During the months of February 2025 and March 2025, CS1 an CS2 provided information to SA Norton and NPD Detective Luttrell about a potential firearms/narcotics trafficker, JOHNSON, and large quantities of narcotics being packaged and sold out of a hair salon near N. Military Highway in Norfolk, Virginia. Through conversations with JOHNSON, CS2 learned that MARTIN was JOHNSON's source of supply for cocaine, and that JOHNSON was involved in the distribution of cocaine, cocaine base, and suspected fentanyl pills.

11.     On March 12, 2025, CS1 and CS2 arranged a controlled purchase of one (1) ounce of cocaine base for $1,000.00 from JOHNSON. CS1 and CS2 contacted JOHNSON and arranged to complete the purchase at the hair salon. JOHNSON entered the CSs' vehicle and exchanged the agreed upon ounce of cocaine base for $1,000.00. JOHNSON exited the CSs' vehicle and walked directly inside of the business.

12.     Once the purchase was completed, CS1 and CS2 met with the investigative team and turned over all evidence and recording devices. The suspected cocaine base was sent to the DEA Mid-Atlantic Laboratory for analysis and tested positive for 16.90 grams of cocaine base.

13.     On March 19, 2025, CS1 and CS2 arranged a controlled purchase of one (1) ounce of powder cocaine for $1,300.00 and thirty (30) hydrocodone pills for $300.00 from JOHNSON. CS1 and CS2 contacted JOHNSON and arranged to complete the purchase at JOHNSON's apartment (968 Armfield Circle, Norfolk, Virginia). JOHNSON walked from the area of his apartment building and met the CSs in the open parking in front of 968 Armfield Circle. JOHNSON exchanged the agreed upon ounce of powder cocaine for $1,300.00 and thirty (30) hydrocodone pills for $300.00 and then left in a ride share.

14.     Once the purchase was completed, CS1 and CS2 met with the investigative team and turned over all evidence and recording devices. The suspected powder cocaine and oxycodone pills were sent to the DEA Mid-Atlantic Laboratory for analysis. The suspected powder cocaine tested positive for 21.87 grams of cocaine hydrochloride. The total unit count for the hydrocodone pills was twenty-eight (28) tablets and tested positive for hydrocodone.

15.     On April 2, 2025, CS1 and CS2 arranged a controlled purchase of two (2) ounces of cocaine for $2,400.00 from JOHNSON. CS1 and CS2 contacted JOHNSON and arranged to complete the purchase at the salon. Upon arrival, CS2 entered the salon and requested the agreed upon two ounces of cocaine for $2,400.00. JOHNSON advised CS2 he needed an hour to obtain the cocaine. CS2 exited the salon, and surveillance was maintained of JOHNSON leaving to obtain the requested narcotics.

16.     Surveillance observed JOHNSON enter a vehicle (believed to be an Uber) and travel to 7700 block of Odgen Ave., Norfolk, Virginia, a location previously identified as

MARTIN's residential address. Prior to entering the vehicle, JOHNSON texted the CSs to meet him at his residence. A short time later, surveillance observed JOHNSON walking from the area of Odgen Avenue towards his residential address at 968 Armfield Circle carrying a bag. JOHNSON met with the CSs in the parking lot in front of his residence. JOHNSON entered the CSs vehicle and exchanged the agreed upon two ounces of cocaine powder for $2,400.00. Following the exchange, JOHNSON returned to his apartment.

17.     Once the purchase was completed, CS1 and CS2 met with the investigative team and turned over all evidence and recording devices. The suspected cocaine was sent to the DEA Mid-Atlantic Laboratory for analysis and tested positive for 25.44 grams of cocaine hydrochloride and 22.38 grams of cocaine base.

18.     On April 16, 2025, CS1 and CS2 arranged a controlled purchase of two (1) ounce of cocaine base and one (1) ounce of powder cocaine from JOHNSON for $2,400.00. CS1 and CS2 contacted JOHNSON to place an order. After the order was placed, surveillance observed MARTIN leave his residence at 7774 Odgen Ave., Norfolk, Virginia, and travel in a vehicle to 968 Armfield Circle, Norfolk, Virginia, where he met with JOHNSON inside the vehicle. JOHNSON then contacted the CSs and advised he had obtained the narcotics and to meet at the salon.

19.     Approximately 20-30 minutes later, surveillance observed JOHNSON enter a ride share vehicle which took JOHNSON to the salon. Upon arrival, JOHNSON entered the CSs vehicle in the open parking lot facing the salon and exchanged the agreed upon one (1) ounce of cocaine and one (1) ounce of cocaine base for $2,400.00.

20.     Once the purchase was completed, CS1 and CS2 met with the investigative team and turned over all evidence and recording devices. The suspected cocaine was sent to the DEA

Mid-Atlantic Laboratory for analysis and tested positive for 24.21 grams of cocaine hydrochloride and 24.29 grams of cocaine base.

21.    On April 28, 2025, investigators from the Norfolk Police Department, with the assistance of the ATF, executed a search warrant at MARTIN's residence, 7774 Odgen Ave., Apt. H, Norfolk, Virginia.  Investigators recovered a glock 26 firearm (with an altered serial number), a ten (10) round glock magazine, three (3) 9mm luger rounds, a glock gun box containing a sixteen (16) round glock magazine and sixteen (16) rounds of ammunition, marijuana, $1,666.00, and a digital scale.  Investigators also recovered 21.73 grams of cocaine hydrocholoride and 15.63 grams of cocaine base from a toilet basin inside of the residence.

22.    I conducted a criminal history check and reviewed MARTIN's Virginia Criminal Record.  I found MARTIN has multiple prior felony convictions and is prohibited from possessing firearms.

23.    MARTIN admitted to Det. Luttrell that he sold cocaine to get by and to support his habit.

III.    **CONCLUSION**

24.    Based on the above facts, I submit that there is sufficient probable cause to believe that on or about April 16, 2025, in the Eastern District of Virginia, JAQUAN JOHNSON, did knowingly distribute a mixture or substance which contains a detectable amount of cocaine hydrochloride, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

25.    I further submit that there is sufficient probable cause to believe that on or about April 16, 2025, in the Eastern District of Virginia, JAQUAN JOHNSON, did knowingly distribute

a mixture or substance which contains a detectable amount of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

26.    I further submit that there is probable cause to believe that on or about April 16, 2025, in the Eastern District of Virginia, WILLIAM D. MARTIN did knowingly distribute a mixture or substance which contains a detectable amount of cocaine hydrochloride, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

27.    I further submit that there is probable cause to believe that on or about April 16, 2025, in the Eastern District of Virginia, WILLIAM D. MARTIN did knowingly distribute a mixture or substance which contains a detectable amount of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

28.    I further submit that there is sufficient probable cause to believe that on or about March 12, 2025, through on or about April 28, 2025, in the Eastern District of Virginia, JAQUAN JOHNSON and WILLIAM D. MARTIN knowingly conspired to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C).

29.    I further request that the Court authorize issuance of an arrest warrant for WILLIAM D. MARTIN and JAQUAN JOHNSON for these offenses.

Further your affiant sayeth naught.

_____

Devin R. Conyers, Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me this ___20th___ day of October 2025.

_____
UNITED STATES MAGISTRATE JUDGE

Read and Reviewed:

_____
Kelly Cournoyer
Special Assistant United States Attorney

9